(No. 69559.—)

P. REGINALD FELLHAUER, Appellee, v. THE CITY OF GENEVA *et al.* (Richard Lewis, Indiv. and as Mayor of the City of Geneva, Appellant).

*Opinion filed February 22, 1991.*

FREEMAN, J., joined by CLARK and HEIPLE, JJ., specially concurring.

Gary L. Starkman, of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

Stephen M. Cooper and Peter M. Storm, of the Law Offices of Cooper & Storm, of Geneva, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Plaintiff, P. Reginald Fellhauer, brought the present action in the circuit court of Kane County against the City of Geneva and Richard Lewis, individually and as mayor of the City of Geneva. Plaintiff, the former director of the Geneva electrical department, alleged that Mayor Lewis engaged in a series of acts that ultimately resulted in the termination of plaintiff's employment

with the city. The circuit judge dismissed the portion of the amended complaint against defendant Lewis for failure to state a cause of action. The appellate court reversed the circuit court's judgment and remanded the cause action for further proceedings. (190 Ill. App. 3d 592.) We allowed defendant Lewis' petition for leave to appeal (107 Ill. 2d R. 315(a)). The plaintiff's claims against the City of Geneva are not at issue in the present appeal.

On review of an order dismissing a complaint for failure to state a cause of action, all well-pleaded facts and inferences are accepted as true. (*Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 298-99; *Acorn Auto Driving School, Inc. v. Board of Education of Leyden High School District No. 212* (1963), 27 Ill. 2d 93, 96.) Plaintiff was appointed director of electrical services of the City of Geneva in 1974, and he served in that position until he was discharged, in 1986. As director of that department, plaintiff was the chief administrator of the city's electrical operations. The city owns and operates an electrical distribution system, purchasing power from electric utility companies and selling it to city residents. During 1984 and the spring of 1985, plaintiff participated in negotiations with the Wisconsin Electric Power Company (WEPCO) for the sale of power to the city. The negotiations culminated in an agreement, signed April 23, 1985, under which WEPCO would sell electric power to the city. The rate agreed to by the parties was lower than that charged by the city's previous supplier, the Commonwealth Edison Company.

In late 1984 and early 1985, defendant Richard Lewis was a candidate for the office of mayor of the City of Geneva. Lewis had previously served on the Geneva city council as an alderman. In February 1985, Lewis asked plaintiff to "slow down" the course of the negotiations with WEPCO so that Lewis' opponent, the city's acting

mayor, would not benefit from their successful completion. Plaintiff responded that he would not interfere with the progress of the negotiations.

Lewis was elected mayor of Geneva, and he assumed office in May 1985. Following his election, Lewis solicited from vendors contributions to a fund for the retirement of his campaign debt. Plaintiff alleges that a number of vendors asked him whether they were required to make contributions as a condition of doing business with the city. Plaintiff told the vendors that they need not do so, and plaintiff later referred the question to the city attorney for clarification.

Soon after he became mayor, defendant Lewis asked plaintiff to "sell out" the city's existing contract with WEPCO and negotiate a better contract with Commonwealth Edison, the city's former supplier of electricity. Plaintiff responded that such action would be a breach of the city's contractual commitment with WEPCO. According to the amended complaint, Lewis then proceeded to negotiate personally with representatives of Edison in an attempt to obtain a more favorable agreement. In private meetings, Lewis made available to Edison certain documents prepared by the city's consultants analyzing both the WEPCO agreement and Edison's new proposals. On December 6, 1985, plaintiff wrote to the Wisconsin attorney who represented the city in its dealings with WEPCO, questioning the propriety of Lewis' conduct. Upon learning of the correspondence, Mayor Lewis ordered plaintiff to end his involvement with power supply matters and instructed the Wisconsin attorney to have no further contact with plaintiff.

In January 1986, plaintiff attempted to inform the aldermen who served on the city council's electric committee and utility committee of the circumstances surrounding the power supply issue. Mayor Lewis learned of plaintiff's efforts to communicate directly with the coun-

cil members and directed plaintiff to cease doing so. Lewis also suggested that plaintiff seek other employment. On January 20, 1986, Mayor Lewis told plaintiff that he intended to discuss the power supply issue with the city council and instructed plaintiff "not to say anything." In a subsequent letter to the mayor, plaintiff requested clarification of his duties and of the information that he could divulge to the city council members. Following receipt of the letter, Mayor Lewis terminated plaintiff's employment with the city. As provided by statute, the plaintiff's discharge was later submitted to the city council for its approval. The council ratified the mayor's decision by a divided vote.

Plaintiff commenced the present action in the circuit court of Kane County on February 18, 1986. Plaintiff sought awards of compensatory damages from both Lewis and the City of Geneva under the theory of retaliatory discharge. Plaintiff also requested an award of punitive damages, alleging that defendants were guilty of willful and wanton misconduct. The trial court later granted the defendants' separate motions to dismiss the complaint for failure to state a cause of action.

Plaintiff thereafter filed an amended complaint. Count I alleged that defendants owed to plaintiff a duty of good faith and fair dealing and a duty not to discharge plaintiff in bad faith or for reasons violative of public policy. Plaintiff alleged that defendants breached those duties by discharging him in retaliation for his refusal to interfere with the course of negotiations between the city and WEPCO, for his refusal to cooperate in Mayor Lewis' efforts to solicit campaign contributions from city vendors, and for his refusal to withhold from the city council information pertaining to the power supply issue. Plaintiff further alleged that his conduct was consistent with public policy and local ordinance. Count II, brought against the city alone, was also for retalia-

tory discharge. It contained the additional allegation that plaintiff was discharged for his refusal to commit official misconduct, as defined by statute (Ill. Rev. Stat. 1985, ch. 38, par. 33—3). Count III of the amended complaint was against Lewis individually and sought recovery for wrongful interference with an employment relationship. In count III, plaintiff alleged that defendant Lewis "embarked on a course of conduct" designed to result in plaintiff's discharge from his position as director of electrical services, and plaintiff repeated the allegations of count II concerning his refusal to accede to Lewis' improper requests. In addition, plaintiff alleged that Lewis filed a false statement of charges against plaintiff in the proceeding before the city council. Counts IV and V were brought under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)) and alleged that Lewis and the city, respectively, violated plaintiff's rights by engaging in the conduct alleged in the preceding counts. Finally, in count VI, plaintiff alleged that both defendants had acted with malice, and plaintiff sought an award of punitive damages.

On defendant Lewis' motion, the circuit judge dismissed counts I, III, IV, and VI of the amended complaint for failure to state a cause of action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Those portions of the complaint were dismissed with prejudice, and the judge made the finding required by Rule 304(a) (107 Ill. 2d R. 304(a)) for an immediate appeal of the order.

The appellate court reversed the judgment and remanded the cause for further proceedings. The appellate court found that the plaintiff stated a cause of action against defendant Lewis under each of the three substantive theories pleaded in the amended complaint. The appellate court refused to consider defendant's arguments that his acts were authorized by statute. The court believed that those contentions raised affirmative

matters that were not cognizable under a section 2—615 motion to dismiss.

A majority of the appellate panel declined to follow the contrary holding in *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, and ruled in this case that an action for retaliatory discharge may be brought against supervisory personnel as well as against the employer. (190 Ill. App. 3d at 602-03.) With respect to the merits of the plaintiff's claim, the appellate court determined that the allegations made in the present case were sufficient to state a cause of action for retaliatory discharge. The court believed that the public policy embodied in the official misconduct provisions found in article 33 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, pars. 33—1 through 33—3) was implicated by plaintiff's allegations that he was discharged in retaliation for his refusal to delay the WEPCO negotiations and for his refusal to cooperate with Mayor Lewis' efforts to raise funds to retire his campaign debt. The appellate court denied the third ground on which plaintiff sought to base his claim for retaliatory discharge, however. The court did not believe that communication with the city council on the power supply issue was within the range of duties prescribed by local ordinance for plaintiff's former position. The appellate court thus rejected plaintiff's additional allegation that his discharge in retaliation for such conduct violated public policy. See 190 Ill. App. 3d at 604-05.

The appellate court next determined that plaintiff stated a cause of action under count III of the amended complaint. Distinguishing. the tort of interference with contractual relations from the tort of interference with a prospective economic advantage, the appellate court ruled that plaintiff could proceed on the latter theory. In so holding, the court relied on plaintiff's assertion that his employment was terminated as a proximate result of defendant's filing false charges with the city council to

induce its members to discharge him. See 190 Ill. App. 3d at 607.

The appellate court also held that count IV of the amended complaint alleged sufficient facts to state a cause of action under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)). The court believed that the allegations demonstrated that plaintiff was discharged for exercising the rights guaranteed him by the first amendment of the United States Constitution. The court specifically cited plaintiff's allegations that he was dismissed for attempting to speak to city council members about the power supply issue and for refusing to assist Lewis in the collection of post-election campaign contributions. (See 190 Ill. App. 3d at 608.) The court reinstated all four counts against defendant Lewis—including the claim for punitive damages—and remanded the cause for further proceedings.

Writing separately, one justice dissented from the portion of the appellate court opinion reversing the dismissal of plaintiff's claim for retaliatory discharge. That justice would have followed *Morton* and denied a cause of action for retaliatory discharge against any party other than an employer. See 190 Ill. App. 3d at 609 (Inglis, J., concurring in part & dissenting in part).

We allowed defendant Lewis' petition for leave to appeal. As we have stated, plaintiff's claims against the city are not at issue in the present appeal. Before this court, defendant Lewis argues that all three of the substantive theories of recovery alleged in the plaintiff's amended complaint fail to state a cause of action. We address, in turn, the plaintiff's allegations of retaliatory discharge, intentional interference with a prospective economic advantage, and civil rights violation under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)).

## I. RETALIATORY DISCHARGE

This court has generally adhered to the proposition that "an employer may discharge an employee-at-will for any reason or for no reason." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525.) Nonetheless, the court has recognized a limited and narrow cause of action for the tort of retaliatory discharge. (See *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.) To state a valid retaliatory discharge claim, an employee must show that he was dismissed in retaliation for his activities, and that the dismissal was in contravention of a clearly mandated public policy. *Palmateer*, 85 Ill. 2d at 134.

Plaintiff limits his argument here to the finding of the appellate court that the amended complaint satisfied the requirement by alleging that plaintiff was discharged for refusing defendant Lewis' request that he delay the negotiations with WEPCO, and for refusing to cooperate with Lewis' solicitation of post-campaign contributions from city vendors. Plaintiff submits that he would have been guilty of the offense of official misconduct, as defined by section 33—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 33—3), if he had complied with the mayor's wishes.

We note, as an initial matter, our adjuration in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527, that the mere citation of a constitutional or statutory provision in a complaint will not by itself be sufficient to state a cause of action for retaliatory discharge. Rather, a plaintiff must demonstrate that the public policy mandated by the cited provision is violated by his discharge. *Barr*, 106 Ill. 2d at 527.

A public officer or employee commits official misconduct when that person, in an official capacity:

"(a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or

(b) Knowingly performs an act which he knows he is forbidden by law to perform; or

(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or

(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law." (Ill. Rev. Stat. 1987, ch. 38, par. 33—3.)

Official misconduct is a Class 3 felony, and conviction for the offense will result in forfeiture of the person's office or employment. Ill. Rev. Stat. 1987, ch. 38, par. 33—3.

The official misconduct statute was designed to prevent a public officer or employee from using his official position in the commission of an offense. As the provisions of the statute indicate, a charge of official misconduct under section 33—3 must specify the "law" allegedly violated by the officer or employer in the course of committing the offense. (See, *e.g., People v. Bassett* (1988), 169 Ill. App. 3d 232, 235; *People v. Weber* (1985), 133 Ill. App. 3d 686, 690-91 ("law" includes civil or penal statute, supreme court rule, administrative rule or regulation, or tenet of professional code).) We note that plaintiff does not specify here a law that would have been violated by his acquiescence to defendant's request to delay the WEPCO negotiations. In addition, the amended complaint alleges only that plaintiff was discharged for advising public vendors that their continued business relationship with the city did not depend on a donation to the mayor's campaign fund and for inquiring with a city attorney regarding the propriety of defendant's solicitations. Even accepting the facts in the complaint as alleged and viewed in the light most favorable to the plaintiff (see *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187), therefore, it is question-

able whether plaintiff sufficiently alleged facts demonstrating official misconduct. We need not resolve that issue, however, for, as we explain below, we do not believe that recognition of a claim for retaliatory discharge is necessary in these circumstances to vindicate the public policy underlying section 33—3 of the Criminal Code.

As we have stated, recognition of a cause of action for retaliatory discharge is an exception to the general rule of at-will employment. The tort seeks to achieve "a proper balance *** among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." (*Palmateer*, 85 Ill. 2d at 129.) A brief review of the court's decisions in *Palmateer* and *Kelsay* demonstrates the interaction of those three interests.

In *Kelsay*, an at-will employee was discharged for filing a claim under the Workmen's Compensation Act. (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq*.) This court recognized that in the absence of a cause of action for retaliatory discharge, an employer could frustrate the purposes of the legislation by exercising its absolute power to terminate an employee at will. (*Kelsay*, 74 Ill. 2d at 181-82.) In addition, the court noted that the relatively small fine authorized by the Act was not a strong deterrent to such employer misconduct and did not directly benefit improperly discharged employees. *Kelsay*, 74 Ill. 2d at 185.

In *Palmateer*, the employee alleged that he was discharged because he supplied information to local law enforcement authorities about possible criminal activity by a co-employee, and because he agreed to provide assistance in any investigation and trial of the matter. On review, this court determined that the complaint alleged facts sufficient to state a cause of action for retaliatory discharge. In support of that result, the court pointed to

the obvious public policy favoring the investigation and prosecution of crime, and to the need to encourage public cooperation in those activities. *Palmateer*, 85 Ill. 2d at 132.

In both *Kelsay* and *Palmateer*, the court recognized that an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner. In those circumstances, recognition of a cause of action for retaliatory discharge was considered necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy.

Such compelling circumstances are absent here. First, the official misconduct statute contains its own strong deterrents to violations. When a public officer or employee is approached with a request to commit an act that would constitute official misconduct, as alleged by the plaintiff here, the officer's or employee's fear that he will be discharged for refusing to accommodate the illegal request will be tempered by the potential consequences of his own activity. Under the terms of the statute, the officer or employee would risk both forfeiture of his position and conviction for a Class 3 felony. See Ill. Rev. Stat. 1987, ch. 38, par. 33—3.

Moreover, the limited benefit that might be gained by recognizing a claim for retaliatory discharge in this instance is outweighed, in our view, by the separate concern articulated by the legislature in section 3—11—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 3—11—1). Section 3—11—1 provides, in pertinent part:

"Except where otherwise provided by statute, the mayor may remove any officer appointed by him, under this Code, on any formal charge, whenever he is of the opinion that the interests of the city demand removal, but he shall report the reasons for the removal to the council

at a meeting to be held not less than 5 nor more than 10 days after the removal. If the mayor fails or refuses to report to the council the reasons for the removal, or if the council by a two-thirds vote of all its members authorized by law to be elected, disapproves of the removal, the officer thereupon shall be restored to the office from which he was removed."

Relying on section 3—11—1, defendant maintains that a mayor has absolute discretion to remove any officer appointed by him or his predecessor whenever it is the mayor's belief that the best interests of the city demand that action. The defendant contends that this legislative authorization indicates a public policy favoring mayoral discretion in the removal process and necessarily insulates a mayor's motives from judicial review. In response, plaintiff argues that although section 3—11—1 of the Illinois Municipal Code grants a mayor the power to remove an appointed officer, it does not confer upon him an absolute immunity from liability for the malicious and intentional abuse of that power. We need not resolve this issue in the present case, however, in view of our holdings below on the merits of the plaintiff's individual claims against defendant Lewis.

The statute grants to a mayor authority to discharge an appointed officer whenever the mayor believes that discharge is in the municipality's best interest. The requirement that a meeting be convened shortly after the dismissal, and the power of two-thirds of the members of the city council to restore the officer to the position from which he was removed, protect the officer's interest in securing a livelihood and provide an appropriate forum in which to resolve the merits of the dismissal. To expose a mayor to the possibility of suit for retaliatory discharge in instances similar to the one before us would, we believe, improperly inhibit the mayor's discretionary authority over appointments without significantly

advancing the public policy expressed in the official misconduct statute.

Because plaintiff has failed to demonstrate that his discharge contravened a clearly mandated public policy, we conclude that count I of his amended complaint fails to state a cause of action for retaliatory discharge. Accordingly, we need not determine here whether an action for retaliatory discharge may be brought against an agent of the employer, as the appellate court held in the present case, or whether such an action may be asserted only against an employer, as the appellate court held in *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417.

## II. TORTIOUS INTERFERENCE

We turn next to count III of plaintiff's amended complaint, which alleged that defendant Lewis embarked on a course of conduct intended to result in the termination of plaintiff's employment with the City of Geneva. In the present case, the appellate court noted the division among the appellate districts on the question whether an at-will employee may prevail in a cause of action alleging tortious interference with contractual relations (compare *Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112 (prospective economic advantage), and *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547 (prospective economic advantage), with *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121 (interference with contractual relationship)), and determined that an at-will employee such as plaintiff has no enforceable contractual right to employment and therefore cannot prevail under the theory of tortious interference with contractual relations. Reasoning that an at-will employee may have a legitimate expectation of continued employment, however, the appellate court found that count III of plaintiff's amended complaint sounds in the tort of intentional interference with a prospective economic advantage. (190 Ill. App. 3d

at 607.) The appellate court went on to conclude that the allegations of the amended complaint were sufficient to state a cause of action under that theory. Specifically, the appellate court noted the plaintiff's allegation that Mayor Lewis filed a list of false charges with the city council so that the council members would agree to plaintiff's discharge. We note that plaintiff makes no challenge to the appellate court's conclusion that the appropriate theory in the present case is the tort of intentional interference with a prospective economic advantage.

This court, though recognizing the tort of interference with prospective economic advantage in an employment relationship (see *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 251), has never explicitly set forth the elements of that cause of action. It is generally recognized by the Illinois courts, however, that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 235; *Tru-Link Fence Co. v. Reuben H. Donnelly Corp.* (1982), 104 Ill. App. 3d 745, 751; see also *Philip I. Mappa Interests, Ltd. v. Kendle* (1990), 196 Ill. App. 3d 703, 708; *Kurtz v. Illinois National Bank* (1989), 179 Ill. App. 3d 719, 727.

Defendant Lewis first argues that plaintiff's amended complaint does not allege facts sufficient to demonstrate that plaintiff had a legitimate expectancy of continued employment with the city. In this regard, defendant notes that plaintiff's appointment was for a term not to exceed that of the mayor who appointed him. (See Ill.

Rev. Stat. 1987, ch. 24, par. 3—7—2.) Plaintiff was originally appointed to his position by an earlier mayor and was not reappointed to that position by Mayor Lewis after Lewis assumed office; plaintiff was, therefore, a holdover appointee.

This court nevertheless has long recognized a legitimate expectancy in an employment relationship. "[W]here the contract is one of employment, it is immaterial whether it is for a fixed period or is one which is terminable by either party at will, both parties being willing and desiring to continue the employment under that contract for an indefinite period." *London Guarantee & Accident Co. v. Horn* (1903), 206 Ill. 493, 507.

Defendant Lewis next argues that he was acting within the privilege of his office when he terminated plaintiff's employment as director of the city's electrical department. Relying on section 3—11—1 of the Illinois Municipal Code, defendant argues that, pursuant to that authority, his discharge of plaintiff was privileged. (See Ill. Rev. Stat. 1987, ch. 24, par. 3—11—1.) In response, plaintiff asserts that any claim of privilege must be pleaded as an affirmative matter and therefore cannot be raised in motion to dismiss under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615).

This court recently observed that if "the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 156.) A similar requirement should be applicable here: it would be anomalous to impose that burden when the alleged interference is with an existing contract, as in *HPI Health Care*, but not when the alleged interference is with a prospective economic advantage, as in the present case. Because

defendant Lewis relied on the privilege expressed in section 3—11—1 in discharging the plaintiff, it is plaintiff's burden to plead, as part of his *prima facie* case, that the defendant's actions were "unjustified or malicious."

It is well established that one who intentionally and without justification induces another to breach his contract with a third party will be liable to the other for the pecuniary loss resulting from the failure of the third person to perform the contract. (See Restatement (Second) of Torts §766 (1979).) In *Swager v. Couri* (1979), 77 Ill. 2d 173, this court examined the privilege of corporate officers to act on behalf of a corporation in accordance with their business judgment. There, the court determined that if the company benefited from the challenged action of the corporate officer in breaking the contract, the officer lacked the requisite malice and therefore could not be liable in tort.

For our purposes here, we consider that defendant Lewis' relationship with the city is in many respects analogous to a corporate officer's relationship with a corporation. As the court phrased the issue in *Swager*, "The question presented, therefore, is whether protection of the particular contractual interest at issue merits prohibition of the particular conduct at issue." (77 Ill. 2d at 190.) The situation alleged here does not present an instance of "outsiders intermeddling maliciously in the contracts or affairs of other parties." (*Loewenthal Securities Co. v. White Paving Co.* (1932), 351 Ill. 285, 300.) It instead involves the discharge of an appointed public official by the officer authorized by statute to both initiate and terminate employment for that position. Moreover, although plaintiff alleges that Mayor Lewis filed false charges with the city council, plaintiff has failed to specify in what way the charges were inaccurate or untrue. We conclude that count III of the plaintiff's amended complaint fails to state a cause of action.

### III. SECTION 1983

Count IV of plaintiff's amended complaint alleges that defendant Lewis, individually and in his capacity as mayor, violated plaintiff's civil rights under section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1982)). Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." (42 U.S.C. §1983 (1982).) Two allegations must be made to state a claim under that provision. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo* (1980), 446 U.S. 635, 640, 64 L. Ed. 2d 572, 577, 100 S. Ct. 1920, 1923.

In support of this theory of recovery, plaintiff points to the allegations in his amended complaint that defendant Lewis caused plaintiff to be dismissed for declining to follow defendant's instructions not to speak with the city council and for refusing to aid in the collection of post-election campaign contributions. Plaintiff argues that these allegations sufficiently set forth facts demonstrating a deprivation of Federal rights. Although plaintiff's amended complaint did not specify which rights were allegedly violated by the challenged actions, the appellate court, citing the decisions in *Rankin v. McPherson* (1987), 483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891, and *Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp. 138, found that, under the facts as alleged, plaintiff was discharged for exercising the rights guaranteed him by the first amendment of the United States Constitution. (See U.S. Const., amends. I, XIV.) We agree that

plaintiff's freedom of speech is the underlying right implicated in the allegations.

Defendant contends that plaintiff occupied a governmental policymaking position and that defendant therefore could dismiss plaintiff for what would otherwise be federally protected conduct. Defendant argues here that the Supreme Court's decisions in *Elrod v. Burns* (1976), 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673, and *Branti v. Finkel* (1980), 445 U.S. 507, 63 L. Ed. 2d 574, 100 S. Ct. 1287, recognize that discharge of what may be termed a policymaking or confidential officer based on political affiliation is not actionable under section 1983.

Plaintiff's response is threefold. First, plaintiff contends that defendant failed to assert the policymaking exception in the proceedings below and that the issue has not been preserved for review. Second, plaintiff argues that defendant's position posits an affirmative matter and involves issues of fact, both of which are inappropriate in a section 2—615 motion to dismiss. Finally, on the merits, plaintiff disputes the characterization of his former position as "policymaking" or "confidential" for purposes of section 1983.

Defendant Lewis has not failed to preserve his objection to plaintiff's section 1983 claim. Defendant, in his motion to dismiss, asserted that count IV of plaintiff's amended complaint failed to allege a Federal right of which plaintiff was deprived. The trial judge apparently agreed with that objection, for he dismissed the count for failure to state a cause of action. It was not until the matter reached the appellate court that the right of political affiliation was identified as the basis for the count. We therefore believe that defendant's argument is appropriately before this court. In addition, we note that a party who is an appellee in the appellate court but does not prevail there may raise before this court, in support

of the circuit court's judgment, arguments that were not presented in the appellate court. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502.

We must also reject plaintiff's additional objection to consideration of defendant Lewis' argument that plaintiff served in a policymaking position. A similar objection was rejected in *Newcomb v. Brennan* (7th Cir. 1977), 558 F.2d 825, 829. In that case, a deputy city attorney alleged a section 1983 violation, contending that he was discharged because he announced, against the wishes of the city attorney, his intention to run for Congress. The court in *Newcomb* affirmed the district court's dismissal of the case, holding that the plaintiff's discharge did not constitute a deprivation of his constitutional rights. It ruled that the district court correctly recognized the defendants' contention in their motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), that the plaintiff held a policymaking position. (Fed. R. Civ. Proc. 12(b)(6) (dismissal of complaint for failure to state claim for which relief may be granted).) In determining that the policymaking exception was an appropriate consideration on a motion to dismiss, the court explained that the district court could properly consider facts not alleged in the complaint so long as they were of common knowledge, which included State statutes, city charters, and city ordinances. (*Newcomb*, 558 F.2d at 829. See also *Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 135; *People v. Davis* (1976), 65 Ill. 2d 157, 161.) Defendant Lewis' argument that plaintiff held a position subject to the policymaking exception relies on statutes and ordinances, and thus is a proper consideration in a section 2—615 motion to dismiss.

Finally, we consider the merits of defendant's contention that, because of the sensitivity of plaintiff's former position, he was entitled to dismiss plaintiff for exercis-

ing what would generally be considered federally protected rights. At the outset, we note that the appellate court's and plaintiff's reliance on the holding of the court in *Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp. 138, is misplaced. In *Salkin*, the former chief engineer of the City of Chicago's department of sewers brought suit against the mayor of the city, among other persons, alleging that he was fired because he refused to support the mayor politically. In determining that the plaintiff's complaint was sufficient to meet the pleading requirements of a section 1983 action, the court in *Salkin* noted that the defendants in that case did not contest the plaintiff's assertion that his first amendment rights were violated. (*Salkin*, 628 F. Supp. at 140-42.) Defendant Lewis, however, raises such a challenge here.

In *Elrod* and *Branti* the Court held that the first amendment forbids government officials to discharge public employees solely on the ground that they are not supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved. Nonetheless, although it is apparent that the plaintiff here is a holdover appointee, plaintiff did not allege in the complaint that defendant and plaintiff were members of competing political organizations and that he was discharged for that reason. Plaintiff instead insists that he was discharged because he told city vendors that they were not required to contribute to defendant's postelection campaign fund and inquired with a city attorney whether defendant's solicitations were proper. Assuming that plaintiff's allegations demonstrate that his right of political affiliation was implicated in his discharge, a claim defendant does not contest and therefore the validity of which is not before us, we believe that his former office fits within what has been termed the "policymaking exception" to a section 1983 action. See *Nekolny v. Painter* (7th Cir. 1981), 653 F.2d 1164, 1169.

The powers of the office, and not the tasks of the officeholder, determine whether dismissal is allowed or prohibited. In evaluating whether a plaintiff occupied such a position, we must examine "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." (*Tomczak v. City of Chicago* (7th Cir. 1985), 765 F.2d 633, 640. See also *Bicanic v. McDermott* (7th Cir. 1989), 867 F.2d 391, 394.) According to local ordinance, the director of electrical services is empowered to "direct and coordinate" the activities of the municipal electric department and "supervise the maintenance, operation, construction and planned expansion of all electrical facilities" and is "responsible for the general administration, operating and sales policies of the utility." Geneva, Ill., Municipal Code ch. 2, par. 2—70 (1978), ch. 12, par. 12.17 (Supp. 1985).

The proper inquiry is whether "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." (*Branti v. Finkel* (1980), 445 U.S. 507, 518, 63 L. Ed. 2d 574, 584, 100 S. Ct. 1287, 1295.) "[I]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." (*Branti v. Finkel* (1980), 445 U.S. 507, 517, 63 L. Ed. 2d 574, 583, 100 S. Ct. 1287, 1294, citing *Elrod v. Burns* (1976), 427 U.S. 347, 366, 49 L. Ed. 2d 547, 561, 96 S. Ct. 2673, 2686.) In that respect, the political loyalty of an employee in a policymaking position may be necessary to ensure the implementation of the policies endorsed by the administration of the duly elected representative government, policies presumably sanctioned by the electorate. (See *Elrod*, 427 U.S. at 367-68, 49 L. Ed. 2d at 562, 96 S. Ct. at 2687 (plurality opinion).) Here, plaintiff was a municipal department

head, appointed by the mayor with confirmation of the city council, whose duties included the responsibility to formulate certain policies and procedures to effect the executive's broader policies and goals. We consider that political loyalty to the executive is necessary for an individual who holds that position. Otherwise, policies formulated by the administration could be seriously undermined by a recalcitrant official. "Those the people elect are entitled to employ others who hold their confidence; they must do so if they are to carry out the programs they promised to pursue." (*Bicanic v. McDermott* (7th Cir. 1989), 867 F.2d 391, 395.) To the extent that plaintiff's amended complaint alleges facts demonstrating discharge on account of political association, therefore, the duties and responsibilities of the plaintiff's former position place his discharge beyond the reach of an action brought pursuant to section 1983.

Nor do we believe that defendant's instruction to plaintiff that he was not to communicate with the city council members violated plaintiff's right of free speech under the first amendment. In *Rankin v. McPherson* (1987), 483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891, the Court set forth the following test:

> "The determination whether a public employer has properly discharged an employee for engaging in speech requires 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Rankin*, 483 U.S. at 384, 97 L. Ed. 2d at 324, 107 S. Ct. at 2896-97, quoting *Pickering v. Board of Education of Township High School District 205* (1968), 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731, 1734.

We believe that, on balance, the interest of the mayor in maintaining the loyalty of policymaking and confiden-

tial officers outweighs the officer's interest in commenting on the policies being developed. The city has an interest in maintaining close working relationships for which personal loyalty and confidence are necessary. (See *Pickering*, 391 U.S. at 570, 20 L. Ed. 2d at 818, 88 S. Ct. at 1735.) Indeed, "[i]nterference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." (*Rankin*, 483 U.S. at 388, 97 L. Ed. 2d at 327, 107 S. Ct. at 2899.) Here, plaintiff's attempt to communicate with council members created an obvious tension between him and defendant. We therefore must conclude that directing plaintiff to cease all communications with the city council members regarding the power supply issue and discharging him upon his refusal did not violate plaintiff's right of free speech. Accordingly, we hold that count IV of the plaintiff's amended complaint fails to state a cause of action.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Kane County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE FREEMAN, specially concurring:

While I concur with the conclusion that plaintiff failed to state a cause of action in retaliatory discharge (count I), I am somewhat troubled by the breadth of the majority's rationale.

The majority holds that recognition of a cause of action for retaliatory discharge is not necessary to vindicate the public policy underlying the official misconduct statute because that statute contains its own strong deterrents to violations (Ill. Rev. Stat. 1987, ch. 38, par. 33–3), and the policies of the Illinois Municipal Code fa-

voring mayoral discretion in the removal process pose a significant counterbalancing weight (Ill. Rev. Stat. 1987, ch. 24, par. 3—11—1).

I do not question the maintenance of a proper balance among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood and society's interest in seeing its public policies carried out. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 129.) Therefore, consideration of the impact that recognition of such a claim for retaliatory discharge might have upon mayoral discretion is appropriate. I do, however, question the notion that the penalties, imposed by the official misconduct statute, sufficiently advance the underlying public policy and deter inconsistent employer conduct to the extent that a claim for retaliatory discharge is not cognizable under certain circumstances.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, this court held that despite the existence of criminal sanctions, in the form of fines, which might be imposed upon employers for violating the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)), a civil remedy for damages was necessary to ensure that underlying public policies of the Act were not frustrated. This court stated that the imposition of the small fine, which enured to the benefit of the State, did nothing to alleviate the plight of employees threatened with retaliation for exercising their rights under the Act. We recognized that some employers might conceivably risk the imposition of criminal sanctions in order to escape their responsibility under the Act. Furthermore, we understood that simply because an act is penal in nature, it does not necessarily follow that a civil remedy is thereby barred.

Similarly, in *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, we held that despite the existence

of section 5851 of the Energy Reorganization Act (42 U.S.C. §§5851(a), (b) (1982)), which protects an employee from employer retaliation by allowing reinstatement and recovery of compensatory damages, a cause of action for retaliatory discharge was, nevertheless, cognizable.

In keeping with our analysis in *Kelsay* and *Wheeler*, the forfeiture of office by a public employee, or the criminalization of his conduct, does not necessarily effect the prevention of pressured official misconduct, nor do such penalties obviate the need for additional remedies. In sum, I do not think that the deterrent effects of the official misconduct statute (imposed solely upon employees) ought to be afforded the weight the majority presupposes. I can readily envision a future situation in which a public employee's "whistle-blowing" conduct is unambiguously supported by the public policy underlying the official misconduct statute with the result that the majority's rationale concerning "deterrents" simply does not work.

Rather than relying upon a balancing of policy interests and appropriate implementations, I believe that the result here would have been realized simply by considering whether plaintiff's discharge contravened clearly mandated public policy. (*Palmateer*, 85 Ill. 2d at 134.) Here is an instance of the alleged actions hardly being supported by the public policy, underlying the official misconduct statute, so that the discharge could be said to contravene that policy. Indeed, plaintiff cites to no law that would have been violated by his acquiescence to defendant's request to delay the WEPCO negotiations as required by the misconduct statute (see *Abrams v. Echlin Corp.* (1988), 174 Ill. App. 3d 434, 440), and only alleges that he properly advised public vendors regarding contributions and made inquiry of the city attorney. Certainly, the nature of the interests at stake here is suffi-

ciently muddled so that a cause of action for retaliatory discharge has not been alleged.

JUSTICES CLARK and HEIPLE join in this special concurrence.