# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3930

WILLIAM D. BURRELL,

*Plaintiff-Appellant,*

v.

CITY OF MATTOON; DAVID CARTER, Mayor
of the City of Mattoon; HAROLD D. GAMBILL,
MARK DONNELL, JERROLD HESSE, and DAVID
R. SCHILLING, City Council Members of the
City of Mattoon,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 01 C 2270—**Harold A. Baker**, *Judge.*

_____

ARGUED MAY 18, 2004—DECIDED AUGUST 6, 2004

_____

Before FLAUM, *Chief Judge*, and KANNE and ROVNER,
*Circuit Judges.*

KANNE, *Circuit Judge.* William D. Burrell served as the
city clerk for Mattoon, Illinois from July 1994 until April
30, 2001, when he was allegedly terminated from the posi-
tion by the newly elected mayor and incoming city council.
The new mayor and city council had not taken office at the
time of Burrell's alleged firing; yet, Burrell sued the City,

the mayor-elect, and incoming city council members in federal court, claiming that they deprived him of his job without due process of law in violation of 42 U.S.C. § 1983. The district court granted summary judgment in favor of the defendants on Burrell's § 1983 claim and on his supplemental state law claims. We affirm.

## I. History

The mayor of Mattoon, with the city council's approval, appoints the city clerk. *See* 65 Ill. Comp. Stat. 5/3.1-30-5(a)(11) (vesting power in a municipality's mayor, with the advice and consent of the city council, to appoint "officers necessary to carry into effect the powers conferred upon municipalities"). The appointment is for a fixed term, "but the term of office . . . shall not exceed that of the mayor . . . ." 65 Ill. Comp. Stat. 5/3.1-30-5(c). According to Mattoon city ordinance, the city clerk is not only an officer, but is also an employee of the city, and as such is subject to the City of Mattoon Personnel Code. The City of Mattoon Personnel Code requires that city employees be subject to progressive discipline prior to termination.[1]

The City of Mattoon municipal elections held in April 2001 resulted in a complete turnover in all city council seats and the office of mayor. Although the new mayor and city council members were sworn in sometime after the election in a private ceremony, city ordinance dictated that they did not officially begin their terms in office until their inauguration, which would take place at the first regular or special meeting of the city council in the month of May following

---

[1] The defendants do not dispute Burrell's unsupported characterization of the Personnel Code (no copy of the pertinent section(s) of the Code was provided by either party), so we will presume it is accurate.

the general election. Concomitantly, the outgoing mayor's and city council members' terms would end upon their successors' inauguration at the May meeting. It is undisputed that the first regular or special meeting of the city council in the month of May after the general election took place the evening of May 1, 2001, whereupon the incoming mayor and city council began their terms in office immediately after their inauguration and the outgoing officials' terms ended.

Burrell had been appointed to his position by the outgoing mayor, Wanda Ferguson. According to statute, his term in office coterminated with hers on May 1, 2001. It was anticipated that Burrell would be reappointed to his city clerk position by the incoming mayor and city council, and a resolution to that effect had been prepared for presentation at the May 1, 2001 city council meeting. To Burrell's great shock and consternation, on April 30, 2001, the mayor-elect, David Carter, and the incoming council members, Harold D. Gambill, Mark Donnell, Jerrold Hesse and David R. Schilling (collectively, the "individual defendants"), met with Burrell and told him that he would not be reappointed to the city clerk position the following evening because of perceived performance problems. It is undisputed that prior to this conference with the incoming officials, Burrell had not received any warnings or other progressive discipline indicating that his performance was deficient. Immediately after the meeting, Burrell told co-workers he had been fired, turned in his keys and cell phone, and left the building. True to their word, the individual defendants appointed Burrell's assistant, Susan O'Brien, as city clerk at the May 1, 2001 meeting, in place of Burrell.

Burrell does not claim that he was entitled to reappointment to the city clerk position on May 1, 2001. He does claim that he was entitled to serve out the remainder of his term, that is, until the incoming mayor and city council were inaugurated on May 1, 2001. He argues that the City

and individual defendants terminated him on April 30, 2001 without following the progressive discipline procedure required by the City of Mattoon Personnel Code. Because he was forced out of office one day prematurely, he claims, among other damages, that he was unable to convert his pension, resulting in hundreds of thousands of dollars of loss.[2]

Burrell filed his suit in federal district court against the City and the individual defendants alleging, under 42 U.S.C. § 1983, that they violated the federal constitution by depriving him of his job without due process of law. He also brought supplemental state law claims for violation of Illinois's Open Meetings Act, 5 Ill. Comp. Stat. 120 *et seq.*; for breach of contract; for interference with a prospective contractual relationship and/or with a prospective economic advantage; and for conspiracy relating to all of the above. The district court dismissed Burrell's claim based on the Open Meetings Act and the portions of the conspiracy count relating to the alleged Open Meetings Act violation. Burrell does not appeal that ruling.

The court subsequently dismissed the remainder of Burrell's claims upon the defendants' motion for summary judgment. The judge found that Burrell, who rested entirely on his

---

[2] In his briefs to this court and at oral argument, Burrell represented that the thrust of his lawsuit is recovery of lost pension rights. According to Burrell, he could only convert his pension if he was a current employee at the time he made the request. He argues that his unexpected and immediate termination by the defendants resulted in the sacrifice of hundreds of thousands of dollars in accrued pension benefits. Although, if true, this result strikes the panel as bizarre and unfair, there is nothing in the record supporting Burrell's assertions that the City of Mattoon or State of Illinois maintained such a policy. In any event, we need not sort out this issue, as we find dismissal of Burrell's lawsuit on the merits appropriate.

pleadings as to key disputed facts, failed to advance any evidence tending to show that the City or individual defendants prevented him from serving out the remainder of his term. Because Burrell could not support his contention that he suffered any actual deprivation of a constitutional right—that is, the loss of his job without due process—the judge granted summary judgment on the § 1983 claim. Relatedly, the court determined Burrell could not establish a breach of contract because nothing the defendants said or did prevented Burrell from working his last day in office. The judge also quickly dispatched Burrell's claims of tortious interference with a prospective contractual relationship and/or tortious interference with a prospective economic advantage for failure to meet necessary elements under Illinois law. Finally, because all of the claims upon which the conspiracy count was predicated failed, the judge dismissed the conspiracy count as well.

## II.  Analysis

We review the district court's grant of summary judgment de novo, construing all facts in favor of the non-moving party. *Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We note, as did the district judge, that where the party seeking summary judgment has supported its recitation of facts with citations to depositions and other record materials, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) [depositions, answers to interrogatories, admissions on file, and affidavits], *except the mere pleadings themselves* . . . ." (emphasis added)).

## A. 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The two key elements establishing a violation of § 1983 are (1) a deprivation of a federally guaranteed right, (2) perpetrated under color of state law. *Id.*; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001).

### 1. Deprivation of a federally guaranteed right

The district judge determined that none of the defendants deprived Burrell of a federally guaranteed right, and we agree. Burrell alleged that the defendants deprived him of his right to due process, in the form of progressive discipline required by the City of Mattoon Personnel Code, prior to losing his job as city clerk. "[T]he existence of a property interest in public employment cognizable under the due process clause depends on whether state law has affirmatively created an expectation that a particular employment

relationship will continue unless certain defined events occur." *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977), *quoted in Hudson v. City of Chicago*, No. 03-2690, 2004 U.S. App. LEXIS 13809, *11 (7th Cir. July 6, 2004). We conclude, as did the district judge, that Burrell had a property interest in completing his appointment as city clerk, which could only be taken away prior to the expiration of the mayor's term in office after appropriate progressive disciplinary steps were followed. Whether Burrell's job was taken away without this due process hinges on whether the defendants terminated his employment on April 30, 2001—forcing him from office a day early without implementing progressive discipline—or whether the defendants simply informed him he would not be reappointed, forcing him from office at the expiration of his appointed term, but not before. Only in the former scenario could Burrell complain of deprivation of a federally guaranteed right.[3]

The evidence provided by the defendants in support of their summary judgment motion included Burrell's statement in paragraph 16 of his fifth amended complaint that mayor-elect Carter, in the presence of the other individual defendants, "informed the Plaintiff that he would not be reappointed as City Clerk at the inaugural meeting of the new City Council to be held the following evening, May 1, 2001, citing 'poor job performance' as the reason for termination." The evidence also included Carter's deposition testimony describing the meeting with Burrell. Carter stated that he and the council-elect met with Burrell the day prior to their inauguration to let him know ahead of time, as a courtesy, that he would not be reappointed at the May 1 meeting. Carter recounted that he did most of the talking and told Burrell the council had no plans to reappoint him

---

[3] As stated previously, Burrell does not allege on appeal that he had any property interest in the city clerk position after the expiration of his appointed term on May 1, 2001.

at the meeting on May 1 because of his job performance. After the meeting concluded, Carter testified that Burrell went out into the hall and spoke with the current mayor, Ferguson. Mayor Ferguson then approached Carter and the other council members and questioned why they "fired" Burrell. Carter corrected her, stating that Burrell would not be reappointed (not fired), which was consistent with what he had communicated to Burrell.

The defendants also offered the testimony of Susan O'Brien, Burrell's assistant and ultimate replacement. She testified that she saw Burrell after his meeting with the incoming council. He told her that he'd been fired. She then met with the incoming council, at which point she said they gave her "[b]asically the same information . . . ." When asked what that information was, she responded, "[t]hat they were not reappointing [Burrell] as a city clerk."

Burrell responded to the above with the deposition testimony of David O'Dell, former chief of police, who spoke with defendant council member Schilling about eight or nine months after Schilling had taken office on May 1, 2001. O'Dell testified that Schilling stated that the council had "fired" Burrell, but provides no elaboration as to when or how the "firing" took place.[4]

From the above, we glean that on April 30, 2001 the incoming mayor and city council-elect told Burrell that he would not be reappointed at their inaugural meeting on

---

[4] Burrell also cited to deposition testimony from Mayor Ferguson, which described her April 30, 2001 meeting with the incoming council about Burrell. According to Ferguson, when she asked the council why they fired Burrell, defendant Schilling answered, "We all decided on this." However, as the district judge noted, Burrell failed to attach the cited pages to his summary judgment evidentiary submission. Thus, it is not part of the record before us on appeal, and we will not consider it. *See Joseph P. Caulfield & Assocs. v. Litho Prods.*, 155 F.3d 883, 888 (7th Cir. 1998).

May 1, 2001 because of performance problems. It's evident that Burrell and others, such as his replacement, O'Brien, and even members of the incoming council, such as Schilling, equated the loss of the reappointment under these circumstances to a termination. But nothing in the evidence supplied by either party suggests that the termination was effective April 30, 2001, rather than May 1, 2001 upon the conclusion of Burrell's term and the appointment of his replacement. Based on the record, no rational trier of fact could conclude that the individual defendants, by informing Burrell he would be out of a job the following day upon the expiration of his term, prevented him from working out the remainder of his time in office. Burrell was not deprived of his job, thus no process was due; he suffered no constitutional deprivation at the hands of the individual defendants or the City.

We note, as did the district judge, that in opposing the summary judgment motion Burrell relied heavily on a statement made in his fifth amended complaint, which, if it had been supported by affidavits or deposition testimony, likely would have passed muster under § 1983's deprivation prong. That statement appears in paragraph 19 and recounts that at the conclusion of his meeting with the incoming council on April 30, 2001, he asked if he should vacate the premises immediately; the defendants allegedly responded affirmatively. The district court had previously pointed out, in granting Burrell's motion to reconsider the court's dismissal of his § 1983 claim under Federal Rule of Civil Procedure 12(b)(6), that this fact was the crux of Burrell's case, and if properly supported, could show he was forced out of office prematurely. Fatally, though, Burrell did not cite or provide his affidavit or portions of his deposition testimony supporting this statement in response to the defendants' summary judgment motion, relying exclusively on the pleadings instead. As outlined above, mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment.

*See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324; *Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002) ("Pleadings are irrelevant at the summary judgment stage. Fed.R.Civ.P. 56(e). Once the affidavits and other materials are on file, the question is not what the pleadings say but what the evidence shows.").[5]

### 2.  Under color of state law

In attempting to explain why he abandoned his position on April 30, 2001, rather than serving out his term, Burrell argued, without record support, to both the district court and to us, that he was "under considerable stress, confronted by the already sworn members of the new City Council (albeit acting ultra vires because the Old Council was still valid) and acted as any reasonable person would" in assuming that people with authority to fire him were doing so. Burrell's contention that the incoming mayor and council-elect had authority, prior to officially taking office, to terminate him on April 30, 2001, and that they did so with the City's blessing, leads us to the second element of the § 1983 claim—whether the defendants acted under color of state law. We find that they did not, establishing an alternative basis for upholding the district court's grant of summary judgment.

For the individual defendants to act "under color of state law" for § 1983 purposes means to "misuse [ ] power, pos-

---

[5]  Burrell did attach a portion of his deposition testimony to his reply brief in this court ostensibly supporting his contention that he was asked to leave immediately following the April 30, 2001 meeting with the council-elect. Unfortunately for Burrell, this evidence comes far too late; our review is limited to the record submitted before the district court, where Burrell's deposition does not appear. *See Joseph P. Caulfield & Assocs.*, 155 F.3d at 888.

sessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Honaker*, 256 F.3d at 484 (quotations omitted). "As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Id.* at 485.

It is undisputed that the individual defendants, though duly elected and sworn, were not yet in office because they had not been inaugurated as required by City ordinance. Hence, they were not yet "state actors." Even if they intended to terminate Burrell on April 30, 2001, they had no power to do so. To the extent Burrell mistakenly believed they did, his erroneous interpretation of the events of April 30 does not convert the individual defendants' private actions into ones perpetrated under color of state law. For example, in related contexts where plaintiffs claim they were promised employment by individuals whom they erroneously believed to be capable of securing the position, we have repeatedly refused to find § 1983 violations when the plaintiffs did not receive the work. *See, e.g.*, *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996) ("Furthermore, an informal assurance by an official who is not authorized to make it does not provide the basis for establishing a protectable constitutional property interest. As we pointed out in another of the many employment cases involving the City of Chicago, promises may very well have been made, but they do not give rise to a property interest unless they are made by the right people.") (citing *Santella v. City of Chicago*, 936 F.2d 328, 331 (7th Cir. 1991) (listing cases)). The individual defendants could not deprive Burrell of any property interest that he may have had in his job because they had no authority to fire him. Thus, they are not amenable to suit under § 1983.

Burrell advances the alternative argument that even if the individual defendants were not state actors, they conspired with a state actor to deprive him of his job. *See*

*Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924
F.2d 106, 107 (7th Cir. 1991) ("When a private actor is im-
plicated, the section 1983 plaintiff may nevertheless prevail
if he shows sufficient state involvement in the action in
question to trigger constitutional protections.") (citing *Nat'l
Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192
(1988)). Under this "joint action" theory, "a private defen-
dant acts under color of state law when he is 'a willful
participant in joint action with the State or its agents.'" *Id.*
(quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). This means
that Burrell needed to allege "some agreement between
private and public actors" to violate his constitutional rights
and show that "both public and private actors share a com-
mon, unconstitutional goal." *Id.* Here, Burrell asserts that
the individual defendants acted in concert with the city
attorney, John Hefner, to violate his constitutional rights.

The record reveals that the incoming council, prior to their
inauguration, met several times to discuss issues they
would confront and changes they wished to make once in
office. One change they agreed upon soon after they began
meeting, according to the deposition testimony of defendant
Schilling, was that Burrell would not be reappointed to the
city clerk position. They shared this decision with Hefner,
the city attorney, in a private meeting shortly before their
inauguration. It is undisputed that Hefner tried to convince
the incoming council to reconsider their decision; however,
both Hefner and Schilling testified that the incoming
council would not be swayed. Hefner then advised the
council-elect about the possible legal implications of their
decision not to reappoint Burrell.

As stated above, to survive summary judgment on the
joint action theory, Burrell needed to show that the state
actor, Hefner, and the individual defendants conspired
together to deprive Burrell of his job without due process of
law and that they were each in some part motivated by that
same unconstitutional purpose. *Cunningham*, 924 F.2d at

107-08. Although it's true Hefner provided legal advice to the incoming council about their decision not to reappoint Burrell, there is no evidence that he advised them to "terminate" Burrell prior to the expiration of his term and without following the progressive discipline steps outlined in the City of Mattoon Personnel Code, or even knew that this was their plan, as Burrell alleges.[6] And, the undisputed evidence shows that Hefner wanted Burrell to keep his job and tried to persuade the council to reappoint him. Hefner thus did not share in the individual defendants' alleged unconstitutional purpose or enter into any agreement with them to violate Burrell's constitutional rights. In short, nothing Hefner said or did transfers the imprimatur of the state to the individual defendants' choice to proceed as they did on April 30, 2001.

Burrell's § 1983 claim fails on both elements—the defendants did not deprive him of any constitutional right nor did they act under color of state law in allegedly so doing. Summary judgment was properly granted on the § 1983 claim. We next move to the district court's determinations on the state law claims.

**B. State law claims**

Although the district court could have dismissed the supplemental state law claims without prejudice because it

---

[6] Burrell vigorously argues that an April 30, 2001 billing entry attributable to another attorney in Hefner's law firm shows that Hefner was aware of and endorsed the incoming council's strategy. This ambiguous entry involving "research in re: 'appointment' of clerk and City of Mattoon Personnel Code and application of it to city clerk's position" does not enlighten the trier of fact as to what advice was rendered, if any, about the timing of the incoming council's meeting with Burrell and the message to be communicated to him. Without more, it cannot defeat summary judgment on the § 1983 claim.

dismissed the § 1983 claim upon which federal jurisdiction was predicated, see 28 U.S.C. § 1367(c)(3), it went on to decide the remaining state law claims on their merits. This is appropriate to ensure the efficient administration of justice, especially in cases such as this where the defeat of the federal claim necessarily requires the defeat of the state law claims. *See, e.g., City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001) ("[W]hen the district court, in deciding a federal claim, decides an issue dispositive of a pendant claim there is no use leaving the latter to the state court.") (quotation omitted).

### 1.  Breach of Contract

Burrell alleged that, in forcing him without warning from his appointed position a day early, the defendants breached the employment contract created by the City of Mattoon Personnel Code, which required progressive discipline prior to any termination. To prove breach of contract under Illinois law, Burrell must come forward with evidence of (1) the existence of a contract; (2) his performance under the contract; (3) the defendants' breach; and (4) resulting injury from the breach. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. App. Ct. 1990)). Assuming that the City of Mattoon Personnel Code established an employment contract between Burrell and the City, see *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987), Burrell simply cannot establish its breach.

First, as already discussed above, the defendants did not terminate Burrell on April 30, 2001—he was free to con-

tinue in his appointed position until the expiration of his term. Second, as already discussed above, even if the individual defendants did intend to terminate him, they were private citizens at the time acting without the imprimatur of the City, were thus not a party to the contract, and could not have breached it. The district judge properly granted summary judgment on the breach of contract claim.

### 2. Tortious interference with contractual relations and/or tortious interference with prospective economic advantage

Burrell also claimed that the individual defendants tortiously interfered with prospective contractual relations and/or tortiously interfered with a prospective economic advantage. Although he frames the contract tortious interference claim as relating to a *prospective* contractual relationship, it is evident from the body of the complaint and from his arguments both below and to us that what he seeks to recover for is interference with his employment contract with the City that should have ended with his term in office, not any *future* contractual relation.

To establish tortious interference with contractual relations under Illinois law, Burrell had to demonstrate the following elements: (1) a valid and enforceable contract; (2) defendants' awareness of the contractual obligation; (3) defendants' intentional and unjustified inducement of the breach; (4) subsequent breach caused by defendants' unlawful conduct; and (5) resultant damages. *Clarage v. Kuzma*, 795 N.E.2d 348, 357 (Ill. Ct. App.), *appeal den.*, 806 N.E.2d 1065 (Ill. 2003). Although his logic is difficult to follow, we understand Burrell to argue that the individual defendants induced the City to breach his employment contract when they assumed its cloak of authority and fired him on April 30. As determined above, there was no contract breach—the individual defendants acted as private citizens on April 30, 2001, could

not and did not fire him, and did not induce the City to do so. His tortious interference with contractual relations claim fails, and summary judgment was appropriately granted.

Burrell's related tortious interference with a prospective economic advantage claim seeks to recover for his purported loss of the opportunity to convert his pension. The elements of such a cause of action are as follows: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)); *see also Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370 (Ill. 1998). While we highly doubt that the opportunity to convert one's pension benefits corresponds to an expectation of entering into a valid business relationship, we easily conclude that the defendants in no way "purposefully interfered" with Burrell's pension benefit conversion rights. The record reflects that the individual defendants told him of their intention not to reappoint him a day early, as a courtesy; they were under no obligation to do so. Indeed, had the individual defendants kept silent until the May 1, 2001 meeting, as was their undisputed right, and let Burrell discover at the expiration of his term that his assistant would be appointed in his stead, Burrell would have been in the same position he claims he is today. The advance warning provided by the incoming council actually gave Burrell an opportunity to get his affairs in order and start the process of converting his pension while a current employee, not the opposite. The individual defendants did not interfere with any purported prospective economic advantage, warranting summary judgment.

### 3. Conspiracy claims

Burrell's final count alleges that the defendants conspired to commit all of the wrongful acts enumerated in the prior counts. As we have affirmed the dismissal of all the predicate counts above, Burrell's conspiracy claim must also fail.

## III. Conclusion

For all of the above reasons, we AFFIRM the judgment of the district court.

A true Copy:

　　　Teste:

　　　　　　　　　　_____

　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*