Docket Nos. 99930, 99945 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee and Cross-    Appellant, v. ROBERT GREVER, Appellant and Cross-Appellee.

*Opinion filed June 2, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

Defendant, Robert Grever, is a former township supervisor of Ela Township, Lake County. Defendant was found guilty of 12 counts of official misconduct (720 ILCS 5/33–3(a), (c) (West 1998)), for his failure to report amounts his wife owed to the township for his mother-in-law's care at the county nursing home.

Defendant was charged by indictment in the circuit court of Lake County with multiple counts of official misconduct. Following a bench trial, defendant was found guilty of all charges. The appellate court reversed five and affirmed three of the convictions. 353 Ill. App. 3d 736.

The State and defendant filed petitions for leave to appeal. This court allowed each petition and consolidated the two. 177 Ill. 2d R. 315. The central, overarching issue in this appeal is whether the indictment was sufficient to state a charge of official misconduct for these convictions. We now affirm in part and reverse in part.

## BACKGROUND

0n February 13, 2002, defendant was charged by indictment with 12 counts of official misconduct. The first six counts pertained to a different year from 1993 through 1998, and charged that defendant, while acting in his official capacity as the Ela Township supervisor:

> "intentionally failed to perform a mandatory act, in that he failed to inform the Ela Township Board of [i]ndebtedness of Mae Chvojka and Ruth Grever to the Winchester House paid for by Ela Township within 30 days of the annual township meeting as required by [60 ILCS 1/70–15(c)(v)], in violation of 720 ILCS 5/22–3(a) *** ."

Counts VII, VIII, and IX of the indictment each referenced a different person who benefitted from defendant's alleged official misconduct and charged that defendant:

> "with the intent to obtain a personal benefit for [Mae Chvojka (count VII), Ruth Grever (count VIII), and Robert Grever (count IX)] performed acts in excess of

his lawful authority, in a series of acts designed to promote a single intent, he submitted bills to the Ela Township Board for payment by the township for the stay of Mae Chvojka at the Winchester House despite the fact that neither Mae Chvojka, nor any representative on her behalf [was] reimbursing the township as required by Ela Township, in violation of 720 ILCS 5/33–3(c) ***.”

Counts X, XI, and XII of the indictment each pertained to a different person who benefitted from defendant's alleged official misconduct from 1992 through 1998, and charged that defendant:

“with the intent to obtain a personal benefit to [Mae Chvojka (count X), Ruth Grever (count XI), Robert Grever (count XII)], performed acts in excess of his official authority in a series of acts designed to promote a single intent, in that he concealed the existence of a debt owed by his wife, Ruth Grever, and her mother, Mae Chvojka, to Ela Township and withheld collection action regarding said debt, in violation of 720 ILCS 5/33–3(c) ***.”

Defendant's motion to dismiss the indictment on statute of limitations grounds was denied. Following a bench trial, defendant was found guilty on all 12 counts charged in the indictment. Defendant's posttrial motions, including a motion in arrest of judgment, were denied. Counts VIII, IX, XI, and XII of the indictment were merged with counts VII and X, and convictions were entered on counts I through VI, VII, and X of the indictment.

The appellate court reversed the convictions for counts I, II, and III, finding them to be outside the statute of limitations, and reversed the conviction for count VII, finding it failed to state an offense, and further concluding that the State failed to prove defendant guilty beyond a reasonable doubt. The appellate court also reversed the conviction for count X, noting that count X failed to state an offense, and determining that the State failed to prove defendant guilty beyond a reasonable doubt. The appellate court affirmed the convictions for counts IV, V, and VI. 353 Ill. App. 3d 736.

The State filed a petition for leave to appeal the reversal of counts VII and X, and defendant filed a petition for leave to appeal the affirmance of counts IV, V, and VI. This court allowed each petition and consolidated the two. 177 Ill. 2d R. 315.

## ANALYSIS

In a posttrial motion in arrest of judgment, defendant argued that the indictment was insufficient to state a charge of official misconduct. Defendant appeals the appellate court's affirming the denial of his motion in arrest of judgment on counts IV, V, and VI. The State appeals the appellate court's reversal of the trial court's denial of defendant's motion in arrest of judgment on counts VII and X.

The United States Constitution and the Illinois Constitution afford criminal defendants the right to be informed of "the nature and cause" of the accusations against them. U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8. Further, section 111–3 of the Code of Criminal Procedure of 1963 requires that a charging instrument set forth "the nature and elements of the offense charged." 725 ILCS 5/111–3(a)(3) (West 1998). A motion in arrest of judgment must be granted by the trial court when the indictment does not set forth the elements of an offense. 725 ILCS 5/116–2(b)(1) (West 1998); *People v. Lutz*, 73 Ill. 2d 204, 209 (1978). We must, therefore, determine whether counts IV, V, VI, VII, and X of the indictment charge offenses punishable by the criminal law of the State of Illinois.

## I. Defendant's Appeal

Defendant stands convicted of three counts of official misconduct for failing to include the indebtedness of his wife for his mother-in-law's nursing home services paid by Ela Township in his annual statement of the township's financial affairs. Counts IV, V, and VI of the indictment charged violations of subsection (a) of the official misconduct statute, requiring proof that defendant, in his official capacity, intentionally or recklessly failed to perform a mandatory duty as required by law. 720 ILCS 5/33–3(a) (West 1998).

Section 70–15(c) of the Township Code (Code) (60 ILCS 1/70–15(c) (West 1998)) requires the supervisor to file with the township clerk an annual statement of the township's financial affairs showing:

> "(i) the balance (if any) received by the supervisor from his or her predecessor in office or from any other source; (ii) the amount of tax levied the preceding year for the payment of township indebtedness and charges; (iii) the amount collected and paid over to the supervisor as supervisor; (iv) the amount paid out by the supervisor and on what account, including any amount paid out on township indebtedness, specifying the nature and amount of the township indebtedness, the amount paid on the indebtedness, the amount paid on principal, and the amount paid on interest account; and (v) the amount and kind of all outstanding indebtedness due and unpaid, the amount and kind of indebtedness not yet due, and when the indebtedness not yet due will mature." 60 ILCS 1/70–15(c) (West 1998).

The indictment was predicated on defendant's alleged intentional failure to report the amounts specified in subparagraph (v) of section 70–15(c). In his posttrial motion in arrest of judgment, defendant argued that counts IV, V, and VI of the indictment failed to charge an offense because subparagraph (v) only required him to report indebtedness and did not require him to report amounts due the township. The trial court rejected this argument and denied defendant's motion. The appellate court affirmed, reasoning that the plain language of the statute requires the conclusion that the phrase "the amount and kind of all outstanding indebtedness due and unpaid" means "both the amount the township owes to others that is due and has not been paid and the amount that others owe to the township that is due and has not been paid." 353 Ill. App. 3d at 751.

Defendant's appeal presents an issue of statutory construction. The construction of a statute is a question of law, and thus review is *de novo. People v. Collins*, 214 Ill. 2d 206, 214 (2005). Our primary objective in construing a statute is to give effect to the intention of the legislature. *People ex rel.*

*Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). The language of the statute is the best indication of legislative intent. *Cryns*, 203 Ill. 2d at 279. The statute should be evaluated as a whole, and each provision construed in connection with every other section. *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000). When the language is unambiguous, we must apply the statute without resorting to further aids of statutory construction. *People v. Glisson*, 202 Ill. 2d 499, 504-05 (2002).

The appellate court noted that "indebtedness" means the condition or state of owing money. 353 Ill. App. 3d at 751-52, citing Black's Law Dictionary 771 (7th ed. 1999). Subparagraph (ii) refers to the amount of tax levied for payment of "township indebtedness and charges." Subparagraph (iv) refers to amounts paid on "township indebtedness." Subparagraph (v), on the other hand, refers to "all outstanding indebtedness." According to the appellate court, the fact that the legislature did not qualify the word "indebtedness" in subparagraph (v) to indicate by whom or to whom the indebtedness is owed, as was done in subparagraphs (ii) and (iv) of section 70–15(c), indicates the legislature's intent to include both indebtedness owed by the township and owed to the township. 353 Ill. App. 3d at 752.

The appellate court rejected defendant's argument that amounts owed to the township are properly designated as accounts receivable. The statute contains no reference to "accounts receivable" and thus, defendant argued, the term "indebtedness" cannot include "accounts receivable." The appellate court, without further elucidation, held that the term "all outstanding indebtedness" covered both amounts owed by the township and amounts owed it, including accounts receivable. 353 Ill. App. 3d at 752.

The appellate court reasoned that the words "township indebtedness," as used in other subparagraphs of the statute, are "simply not the same" as the words "all outstanding indebtedness" used in subparagraph (v). Therefore, the court rejected defendant's argument that because all other references to "indebtedness" in the statute referred to amounts owed by the township, the term as used in subparagraph (v)

should be given the same construction. 353 Ill. App. 3d at 752-53.

Finally, the appellate court concluded that a full statement of the financial affairs of the township would logically require the supervisor to show both the amounts owing on its own indebtedness as well as amounts due the township from other persons or entities. Any other result, according to the appellate court, would be absurd. 353 Ill. App. 3d at 754.

At the outset, we observe that defendant was not charged with failure to provide a full statement of the financial affairs of the township. Even if the indictment had contained that allegation, the parameters of a full statement are set out in subparagraphs (i) through (v) of section 70–15. " 'Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.' " *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 78 (2004), quoting *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997). Thus, the source of the mandatory duty that is the predicate for the indictment must be found in the express language of subparagraph (v) of the section.

Section 70–15(c) sets out the fiscal duties of the township supervisor, its chief financial officer. Subsection (c) prescribes the contents of an annual report to be filed with the township clerk, set out serially in subparagraphs (i) through (v). In accordance with the rule of statutory construction requiring evaluation of each provision in connection with every other provision, we must consider the objective of all the requirements of subsection (c).

Subparagraph (i) requires disclosure of amounts received from the predecessor in office or any other source.

Subparagraph (ii) requires disclosure of the amount of tax levied in the preceding year for payment of township indebtedness.

Subparagraph (iii) requires disclosure of the amount collected and paid over to the supervisor in his capacity as supervisor.

Subparagraph (iv) requires disclosure of any amounts paid out on township indebtedness.

Finally, subparagraph (v) requires disclosure of all unpaid indebtedness and the maturity date of unpaid indebtedness not yet due.

Defendant argues that because the noun "indebtedness" is modified by the adjective "township" in subparagraphs (iii) and (iv), the noun "indebtedness" in subparagraph (v) should be also understood to reference township indebtedness and not to include amounts owed to the township. In *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (2003), we considered a similar argument. We were required to decide whether section 143.17a(b) of the Illinois Insurance Code mandated an insurance company to maintain proof of mailing a notice of a premium increase on an insurance policy in a form acceptable to the United States Postal Service or other commercial mail delivery service. See 215 ILCS 5/143.17a(b) (West 1992). Subsection (a) of section 143.17a, applicable to notice of an intention not to renew, specifically contains that requirement. See 215 ILCS 5/143.17a(a) (West 1992). Subsection (b), however, requires only that the company shall maintain proof of mailing or proof of receipt, and does not specify the nature of the required proof (215 ILCS 5/143.17a(b) (West 1992)). We applied the general rule of statutory construction that when the same words appear in different parts of the same statute, they should be given the same meaning absent some contextual indication that the legislature intended otherwise. Accordingly, we held that the term "proof of mailing" should be given the same meaning in both subsection (a) and subsection (b). *Guillen*, 203 Ill. 2d at 152.

Here, the legislature has used the adjective "township" to modify the noun "indebtedness" in subparagraphs (iii) and (iv) but omitted the adjective in subparagraph (v). We discern no contextual indication that the legislature intended to reference the indebtedness of any other person or entity in subparagraph (v) and, thus, conclude the provision refers to unpaid indebtedness of the township, both current and not yet due. The modifiers "all" and "outstanding," as used in subparagraph (v), do not enlarge the meaning of "indebtedness" to include amounts owed to the township. Rather, those terms describe the types of unpaid township indebtedness the supervisor must

report. Hence, subparagraph (ii) references the amount of taxes collected to apply to township indebtedness; subparagraph (iv) references paid township indebtedness, and subparagraph (v) references unpaid township indebtedness. This is a logical progression, and our construction does not produce an unjust or absurd result.

The State argues that this interpretation renders subparagraph (v) superfluous because it requires the same reporting of township indebtedness mandated by subparagraph (iv). We have explained, however, that the reporting requirements are clearly different, as subparagraph (iv) refers to indebtedness actually paid during the reporting period, while subparagraph (v) refers to *unpaid* indebtedness. Therefore, subparagraph (v) imposes additional reporting requirements and is not superfluous.

We agree with defendant that amounts owed to the township are properly characterized as accounts receivable. "Account receivable" is defined as "a balance due from a debtor on a current account." Merriam-Webster's Collegiate Dictionary 8 (10th ed. 1999). See also Black's Law Dictionary 18 (8th ed. 2004) (defining "account receivable" as "[a]n account reflecting a balance owed by a debtor"). In another context, the legislature has recognized the distinction between debts and accounts receivable. See 65 ILCS 5/8–2–9.2(c) (West 2005) (requiring a municipal budget officer to examine all books relating to "debts and accounts receivable"). Accordingly, it is fair to assume the legislature would have used the latter term had it intended to include those amounts in the reporting requirements of section 70–15(c). "Indebtedness" and "accounts receivable" are discrete concepts, one involving the perspective of a debtor, and the other of a creditor. The plain language of section 70–15(c) only addresses amounts owed by the township, not amounts owed to it. Hence, it does not require reporting of accounts receivable, including the amounts owed the township for nursing care to defendant's mother-in-law.

The State argues that section 70–15(c) must be read in conjunction with section 70–30 of the Code because this court has held that statutes "should also be construed in conjunction

with other statutes addressing the same subject." *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168-69 (1995). Section 70–30 provides:

> "(a) Within 30 days before the annual township meeting, the supervisor shall account to the township board for all moneys received and disbursed by the supervisor in his or her official capacity.
>
> (b) The supervisor shall provide each member of the township board with a copy of his or her statement filed in accordance with Section I of the Public Funds Statement Publication Act as soon as possible after filing the statement." 60 ILCS 1/70–30 (West 2004).

We note that this provision is consistent with the requirement that the supervisor "shall keep a just and true account of the receipts and expenditures of all moneys that come into the supervisor's hands by virtue of the office, in a book to be provided for that purpose at the expense of the township." 60 ILCS 1/70–25 (West 1998).

It is apparent from a comparison of section 70–30 with section 70–15(c) that both statutes address the content of the supervisor's annual report. The State argues that because the statement referenced in section 70–30(b) must detail "all moneys received and disbursed," the two statutes could only be reconciled if the annual report included debts owed to the township. Logic does not compel this conclusion. Both statutes require the supervisor to report moneys received. Neither statute, however, requires reporting moneys owed to the township. Defendant is not accused of failure to report receipts and disbursements, and the record does not support any inference that he failed to comply with those requirements. Therefore, defendant has complied with section 70–30(b) as well as 70–15(c).

We conclude that section 70–15(c)(v) did not require defendant to include his mother-in-law's indebtedness in his annual supervisor's report. Therefore, the indictment, predicated on his failure to include that debt, does not charge an offense. Accordingly, the trial court erred in denying

˘10˘

defendant's motion in arrest of judgment, and the appellate court erred in affirming the trial court. Hence, we reverse the judgment of the appellate court as to counts IV, V, and VI of the indictment. This resolution of defendant's challenge to those counts fully disposes of the issue presented by defendant's appeal, and thus, we need not consider the remaining arguments advanced by the parties in defendant's appeal.

## II. State's Appeal

We now turn to the State's appeal. The State contends the appellate court erroneously interpreted section 33–3(c) of the Code (720 ILCS 5/33–3(c) (West 1998)), in determining that counts VII and X of the indictment were insufficient to state a charge of official misconduct.

Counts VII and X charge defendant with violating section 33–3(c) of the Criminal Code of 1961, stating, in relevant part:

> "Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
>
> * * *
>
> (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority[.]" 720 ILCS 5/33–3(c) (West 1998).

Whether counts VII and X sufficiently allege a crime under section 33–3(c) again requires interpretation of the statute, and the standard of review of an issue of statutory construction is *de novo. Collins*, 214 Ill. 2d at 214. This court has recognized that the official misconduct statute requires that the charging instrument "specify the 'law' allegedly violated by the officer or employer in the course of committing the offense." *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506 (1991).

In *Fellhauer*, the plaintiff filed a cause of action for retaliatory discharge against his former employer, the City of Geneva. Plaintiff, the former director of the city's electrical department, claimed his employment was terminated for his refusal to comply with the mayor's requests to delay negotiations for electrical power until after his election and for

˘11˘

refusing to cooperate in the mayor's solicitation of postcampaign contributions from city vendors. Plaintiff claimed that compliance with the mayor's requests would have violated the official misconduct statute, thus satisfying the requirement that to state a valid claim for retaliatory discharge, an employee must show that the dismissal was against clearly mandated public policy. See *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 134 (1981). On appeal, this court reviewed the official misconduct statute to determine whether plaintiff's allegations were sufficient to state a claim for retaliatory discharge, and stated:

> "a charge of official misconduct under section 33–3 must specify the 'law' allegedly violated by the officer or employer in the course of committing the offense." *Fellhauer*, 142 Ill. 2d at 506.

The State argues that in *Fellhauer*, this court referred to the official misconduct only in *dicta*. The State's argument assumes *Fellhauer*'s analysis of the official misconduct statute is nonprecedential.

This court has observed the distinctions between *obiter dictum* and *judicial dictum*. In *Nudell v. Forest Preserve District*, 207 Ill. 2d 409 (2003), we noted:

> " 'The term "*dictum*" is generally used as an abbreviation of *obiter dictum*, which means a remark or opinion uttered by the way. Such an expression or opinion as a general rule is not binding as authority or precedent within the *stare decisis* rule. [Citation.] On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum*, is a judicial *dictum*. [Citations.] And further, a judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous. [Citation.] Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court. [Citation.]' " *Nudell*, 207 Ill. 2d at 416, quoting *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993).

In *Fellhauer*, whether plaintiff would have been guilty of official misconduct if he had complied with the mayor's request to delay negotiations was directly at issue. The parties briefed and argued application of the official misconduct statute in the context of a retaliatory discharge action. This court noted that it was questionable whether plaintiff sufficiently alleged facts demonstrating official misconduct because he failed to specify a law that would have been violated by his compliance with the mayor's request. *Fellhauer*, 142 Ill. 2d at 506-07. This court determined, however, that it was not necessary to resolve the issue because recognition of a retaliatory discharge claim was not necessary to vindicate the public policy underlying the official misconduct statute. *Fellhauer*, 142 Ill. 2d at 507. The discussion in *Fellhauer* meets the definition of *judicial dictum*. Accordingly, while not essential to the decision, we find *Fellhauer*'s analysis of the official misconduct statute entitled to substantial weight.

Accordingly, we conclude that the indictment must, at a minimum, allege facts that would show defendant violated an identifiable statute, rule, regulation, or tenet of a professional code and demonstrate how defendant exceeded his lawful authority. *Fellhauer*, 142 Ill. 2d at 506; see *People v. Bassett*, 169 Ill. App. 3d 232, 235 (1988). Although *Fellhauer* was a civil action for retaliatory discharge, resolving the issue in that case depended upon an interpretation of the official misconduct statute and is, therefore, relevant to our analysis.

The State admits that counts VII and X do not specify any law that was violated by defendant. Rather, the State argues that defendant acted outside his lawful authority by breaching an "uncodified" fiduciary duty to the public, "predicated on basic moral principles." The State cites to Black's Law Dictionary 624 (6th ed. 1991), to define this "fiduciary capacity" or "fiduciary relation," and summarizes "[t]his general duty to act in an ethical and fair manner" as being the basis of defendant's exceeding his lawful authority. The State recognizes that "[t]here was no specific statute which required defendant to apprise the township board of the failure of any person or entity to pay a bill owed to the township" but argues

that submitting the bills was an "established practice of his position."

The State supports its arguments concerning the general common law doctrine of "fiduciary duty" of public officials with citations to civil cases. The right to a civil remedy for breach of a statutorily created fiduciary duty is clear. See *Madlener v. Finley*, 128 Ill. 2d 147 (1989); *Brown v. Kirk*, 64 Ill. 2d 144 (1976); *City of Chicago ex rel. Cohen v. Keane*, 64 Ill. 2d 559 (1976). Nevertheless, the State has not cited, and our research has not revealed, any case imposing criminal liability for breach of a common law fiduciary duty.

We strictly construe criminal statutes in favor of the accused. *People v. Christensen*, 102 Ill. 2d 321, 328 (1984). Further, we may not impose criminal liability upon defendant simply by accepting the State's argument that some amorphous concept of a "breach of fiduciary duty" has been violated. Further, no breach of any statutorily created fiduciary duty is alleged in the indictment, and defendant was not even apprised that he was accused of such a breach.

Our analysis is consistent with previous appellate court opinions on this issue. In *People v. Weber*, 133 Ill. App. 3d 686 (1985), the State appealed the trial court's dismissal of indictments charging defendant, a State's Attorney, with official misconduct under subparagraph (c) of section 33–3. The indictments alleged that defendant ordered an assistant State's Attorney to direct a grand jury to return indictments prior to the primary election based on improper motivation. The appellate court held the indictments insufficient for failure to allege violation of "a statute, supreme court rule, administrative rule or regulation or tenet of the Code of Professional Responsibility with the intent to obtain personal advantage for himself or for another." *Weber*, 133 Ill. App. 3d at 691. The appellate court found *People v. Samel*, 115 Ill. App. 3d 905 (1983), instructive. *Samel* held that a charge of official misconduct based on the violation of a civil or criminal statute, supreme court rule, or administrative rule would be sufficient even in the absence of a penalty clause. Other panels of the appellate court have similarly held that charges of official misconduct must allege violation of specific laws. See *People v. Adams*, 64 Ill. App. 3d

547, 548-50 (1978) (the specific criminal conduct under the official misconduct statute derives its meaning by referring to acts known to be "forbidden by law"); *Bassett*, 169 Ill. App. 3d at 237 (indictment for official misconduct must state some underlying violation of a statute, rule, regulation or tenet).

In the alternative, the State argues that counts VII and X state a cause of action when the indictment is read together with counts IV, V, and VI of the indictment. We have already held that counts IV, V, and VI of the indictment failed to state a cause of action, and, for the reasons stated in our analysis of those counts, incorporation of the allegations of counts IV, V, and VI, does not remedy the deficiency of counts VII and X.

Accordingly, we hold that the appellate court properly determined that the State failed to charge adequately the "exceeding lawful authority" element of official misconduct under section 33–3(c). We therefore affirm the appellate court's reversal of defendant's conviction on counts VII and X.

Our holding today is mandated by the rules of statutory construction. By no means should it be construed as an approval of defendant's actions. The record establishes that defendant knew that his wife had not reimbursed the township for her mother's nursing home care, yet disclosure was not made to the township board until defendant's acrimonious dissolution of marriage.

Defendant's failure to report amounts owing the township is not criminalized under the official misconduct statute only because the legislature did not specifically provide for inclusion of accounts receivables in the annual report. This legislative scheme is perhaps understandable because townships typically are not creditors.

## CONCLUSION

For the foregoing reasons, we affirm the appellate court's reversal of defendant's convictions on counts VII and X, and we reverse the appellate court's affirmance of defendant's convictions on counts IV, V, and VI. The judgment of the circuit court is reversed.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment reversed.*