Docket No. 108947.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CARMECITA WILLIAMS, Appellee.

*Opinion filed November 18, 2010.*

CHIEF JUSTICE KILBRIDE delivered the judgment of the court,
with opinion.
Justices Freeman, Thomas, Garman, Karmeier, Burke, and Theis
concurred in the judgment and opinion.

**OPINION**

Defendant Carmecita Williams was convicted of official
misconduct (720 ILCS 5/33–3(b) (West 1998)), and sentenced to 24
months' probation. The appellate court reversed defendant's
conviction and entered a judgment of acquittal, concluding that the
evidence was insufficient to sustain her conviction. 393 Ill. App. 3d
77. We allowed the State's petition for leave to appeal (210 Ill. 2d R.
315(a)). For the following reasons, we affirm the judgment of the
appellate court.

# I. BACKGROUND

Defendant was charged by indictment in the circuit court of Cook County with criminal drug conspiracy and official misconduct. The official misconduct count alleged that defendant was a public employee of the Village of Glenwood and "in her official capacity as police dispatcher knowingly performed an act which she knew she is forbidden by law to perform, to wit: she notified Greg Stroud about police activity near his residence in South Holland, Illinois, in order to facilitate illegal drug-dealing by Greg Stroud."

At defendant's bench trial, Alex DiMare testified that he is a retired deputy chief of the Glenwood police department. Defendant was hired as a radio dispatcher in October 1997. As a dispatcher, defendant was required to relay to police officers internal department information and information reported by the public.

DiMare identified an exhibit as the "Glenwood Police Department rules and regulations" covering disclosure of confidential information. DiMare noted that the exhibit also contained "a small section on disciplinary action." He testified that when defendant was hired, she was informed orally and in writing about the confidentiality rules and regulations. DiMare further testified that the rules and regulations were "adopted in 1985" and "were in effect" when he left the department on June 28, 2000.

DiMare identified a time card indicating defendant was at work on July 12, 1998. The State then played tapes of three telephone calls defendant made to Greg Stroud on that date. The first call was placed from a Glenwood police department line while defendant was on duty as a dispatcher. The transcript of that call reflects the following conversation:

> "DEFENDANT: Keep your scan[n]er on there is some stuff going on in your area[.] * * *
>
> MR. STROUD: What up?
>
> DEFENDANT: OK I'm at work[.]
>
> MR. STROUD: What do you hear[?]
>
> DEFENDANT: I'm at work[.]
>
> MR. STROUD: OK[.]"

The second call was placed from the same Glenwood police

department line 20 minutes later. The transcript of the second call states in pertinent part:

"DEFENDANT: You have some eyes staged at the college[.]

\* \* \*

MR. STROUD: What!–A burglary or something?

DEFENDANT: Huh!–No–Some eyes[.] You know what I'm saying?

MR. STROUD: Yeah[.]

\* \* \*

DEFENDANT: Don't worry about that other stuff you're hearing about the barricaded subject that's not what I'm talking about[.]

MR. STROUD: Yeah–Yeah when you get off call me[.]

DEFENDANT: I sure will[.]"

Approximately 1 hour and 20 minutes later, the third call was placed from defendant's home telephone. The transcript of that call states in pertinent part:

"DEFENDANT: Uh–I don't know exactly what–what's going on–It ain't like I really heard nothing[.] It's like OK this guy over there on 160 something and South Park he done barricade his house–Barricade his self in the house and we had to send a SERT team over there so we–

\* \* \*

And uh–We send a SERT team in the area we have to let any agents know in the area that we're coming through and there'll be a lot of radio traffic so either they can change frequencies or whatever and I know I had to send it via computer[.]

MR. STROUD: Alright[.]

DEFENDANT: I had to send it over to they use posts like post one–post two for locations[.]

MR. STROUD: Alright[.]

DEFENDANT: I just so happen to know where post 20 is and that's South Suburban College[.]

-3-

MR. STROUD: Uh huh[.]

DEFENDANT: So I'm not sure what agency you know if there's FBI–DEA–or ATF or whatever but we just know there's agents in the area–Eh you know and they at South Suburban cause that's where I had to send the message to[.]

\* \* \*

MR. STROUD: Huh?–Would it have to be one of them ATF or FBI?

DEFENDANT: Yeah–It's one of them it's it's either ATF[,] FBI or DEA cause those are the only ones that let us know where they at[.]

\* \* \*

MR. STROUD: OK–(Unintelligible) See what that's about let me know[.]

DEFENDANT: Yeah basically they probably won't I probably won't hear nothing but if I do I'll let you know[.]"

DiMare identified defendant's voice on the tapes. He testified that on the date the calls were made, the South Suburban Emergency Response Team (SERT) was assisting with a barricaded person and the dispatcher was required to notify local agencies of that activity. DiMare testified that the information defendant gave to Stroud was confidential under the police department's rules and regulations.

After the State rested, the trial court granted defendant's motion for a directed finding on the criminal drug conspiracy count. Defendant then testified that Greg Stroud is the father of her 14-year-old son. She admitted making the three calls, but testified that she did not know Stroud was dealing narcotics. She told Stroud that police officers were at South Suburban College because it was close to his house and she wanted to get his reaction. She hoped Stroud "would let [her] know if there was anything suspicious going on in his house." On cross-examination, defendant acknowledged that she was informed about the rules and regulations prohibiting disclosure of confidential information. She claimed, however, that she did not disclose any confidential information, but fabricated the information to provoke a response from Stroud.

The trial court found defendant guilty of official misconduct. She

was later sentenced to 24 months' probation with conditions including the performance of 250 hours of community service.

On appeal, defendant contended the State failed to establish that her disclosure of information violated a "law" as required to prove the offense of official misconduct. The State responded that defendant was proven guilty of official misconduct because she violated the Glenwood police department rules and regulations prohibiting disclosure of confidential information.

Following oral argument, the appellate court ordered the parties to provide authority on whether the Glenwood police department rules and regulations are "laws" within the meaning of the official misconduct statute. The State attached to its supplemental brief a copy of the Glenwood Village ordinances covering the police department. The State also attached a copy of the minutes of a Village board of trustees meeting held November 19, 1985, purporting to show that the Board "approve[d] the new Glenwood Police department's Policy and Procedures package, as presented by Trustee Passaglia."

The appellate court determined that the Glenwood police department rules and regulations do not rise to the level of a "law" under the official misconduct statute. Further, even if the rules and regulations had been codified by the Village as ordinances, they are not "laws" because only the legislature can promulgate a law. The evidence that defendant violated those rules was, therefore, insufficient to establish a violation of the official misconduct statute. The appellate court also found that the department's rules and regulations did not apply to defendant because she was not a "member" of the department as defined by the Glenwood Municipal Code. Accordingly, the appellate court reversed defendant's conviction and entered a judgment of acquittal because the evidence was insufficient to prove her guilty of official misconduct. 393 Ill. App. 3d 77.

Justice Murphy dissented, asserting that the rules and regulations were "approved and codified as an ordinance" by the Village of Glenwood, and they should be considered laws within the meaning of the official misconduct statute. The evidence showed that the confidentiality rules applied to defendant as a dispatcher for the police department. Justice Murphy concluded that "[w]hen a police

dispatcher alerts a drug dealer of potential police activity aimed at him, it has to be official misconduct. Put quite simply, if this case is not an example of official misconduct, then I do not know what is." 393 Ill. App. 3d at 94 (Murphy, J., dissenting).

## II. ANALYSIS

On appeal to this court, the State contends that the Glenwood police department rules and regulations are "laws" within the meaning of the official misconduct statute because they were enacted by the municipality as ordinances. The rules have the force of law as administrative rules and regulations. By violating the confidentiality rules of the Glenwood police department, defendant knowingly performed an act that she knew was prohibited by law. Additionally, the appellate court erred in concluding that the confidentiality rules do not apply to defendant. The State, therefore, maintains that defendant was properly convicted of official misconduct.

Defendant responds that the State failed to present competent evidence establishing that the Glenwood police department rules were enacted as municipal ordinances. The confidentiality rules are, therefore, only part of the police department's employment manual. The violation of employment rules cannot be considered performing an act "forbidden by law" as required to prove the offense of official misconduct. The State's argument would allow an official misconduct conviction to be based on a public employee's violation of a minor or trivial employment rule. Defendant further argues that the term "law" should be construed narrowly to include only state statutes and the Illinois Constitution. Thus, even if the confidentiality rules had been enacted by the municipality, the ordinance would not fit within the meaning of a "law" under the official misconduct statute.

Defendant further maintains that the appellate court properly found the confidentiality rules do not apply to her as a civilian employee. Finally, if her violation of the confidentiality rules may serve as a basis for a conviction, defendant contends the official misconduct statute violates her constitutional right to due process.

When assessing whether the evidence is sufficient to sustain a conviction, the reviewing court's inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Bush*, 214 Ill. 2d 318, 326 (2005), quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). Before considering the sufficiency of the evidence, we must first determine whether the confidentiality rules are "laws" within the meaning of the official misconduct statute. The parties dispute whether the confidentiality rules are "laws" and, consequently, whether defendant's violations of those rules are acts "forbidden by law" under the statute.

The construction of the term "law" presents an issue of statutory interpretation subject to *de novo* review. *People v. Howard*, 228 Ill. 2d 428, 432 (2008). The fundamental objective of statutory construction is to ascertain and give effect to the legislature's intent, presuming it did not intend to cause absurd, inconvenient, or unjust results. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). The language of a statute, given its plain and ordinary meaning, is the best indication of legislative intent. *People v. Lewis*, 234 Ill. 2d 32, 44 (2009). Criminal statutes are construed strictly in favor of the accused. *People v. Grever*, 222 Ill. 2d 321, 338 (2006).

Section 33–3(b) of the Criminal Code of 1961 provides that a public employee commits misconduct when, in the public employee's official capacity, he knowingly performs an act he knows is forbidden by law. 720 ILCS 5/33–3(b) (West 1998). The official misconduct statute was intended to prevent public officers and employees from using an official position in the commission of an offense. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 506 (1991). The statute "requires that the charging instrument 'specify the "law" allegedly violated by the officer.' " *Grever*, 222 Ill. 2d at 335, quoting *Fellhauer*, 142 Ill. 2d at 506.

In *Fellhauer*, this court asserted that the term "law" in the official misconduct statute includes a civil or penal statute, a supreme court rule, administrative rules or regulations, or a tenet of a professional code. *Fellhauer*, 142 Ill. 2d at 506 (citing *People v. Bassett*, 169 Ill. App. 3d 232, 235 (1988), and *People v. Weber*, 133 Ill. App. 3d 686, 690-91 (1985)). We have since repeated that conclusion, holding an indictment charging official misconduct "must, at a minimum, allege facts that would show defendant violated an identifiable statute, rule,

regulation, or tenet of a professional code." *Grever*, 222 Ill. 2d at 337. Those statements on the sources of law are not intended to be exhaustive, however, as shown by our subsequent holding that a violation of the Illinois Constitution may serve as a predicate unlawful act for official misconduct. *Howard*, 228 Ill. 2d at 439. Thus, a provision may be a "law" within the meaning of the official misconduct statute even if it does not fit squarely within one of the categories we have previously identified.

In determining whether the confidentiality rules at issue are "laws," we first consider the State's argument that they were enacted as a Village ordinance. At trial, retired deputy police chief Alex DiMare testified that the rules were "adopted in 1985" and were still in effect when he left the department in 2000. The State did not offer any evidence on the drafting of the rules, the process used in enacting them, or the government body that adopted them. The evidence presented at trial on this issue was limited to DiMare's mere statement that the rules were adopted in 1985. Based on this evidence, we cannot conclude that the rules were enacted by the Village as an ordinance.

The appellate court ordered supplemental briefing, allowing the State an opportunity to submit authority establishing that the confidentiality rules are "laws." The State attached to its brief copies of the Glenwood ordinances governing the police department and minutes from a board of trustees meeting held in 1985.

The parties dispute whether this court should take judicial notice of the minutes from the board of trustees meeting. We find it unnecessary to decide whether the minutes are subject to judicial notice because, even if we consider them, they do not establish that the confidentiality rules were enacted as an ordinance. The minutes only state that the board approved a new "Policy and Procedures package" presented by one of the trustees. There is no indication of the contents of the "Policy and Procedures package" or that the confidentiality rules at issue were part of that package. We note that the confidentiality rules have been referred to as "Glenwood Police Department rules and regulations," not as part of a "Policy and Procedures package." Further, the minutes simply state that the package was "approve[d]." They do not indicate that it was enacted as a Village ordinance. Thus, even if the minutes showed that the

confidentiality rules were included in the "Policy and Procedures package," those minutes do not establish that the rules were enacted as an ordinance.

The ordinances submitted by the State include a section entitled "Promulgation of rules and regulations by chief of police." That section states:

> "The chief of police may make or prescribe such rules and regulations as he shall deem advisable. Such rules, when approved by the village president and board of trustees, shall be binding on the members of the police department. Such rules and regulations may cover the conduct of the members, uniforms and equipment to be worn or carried, hours of service, vacations, and all other similar matters necessary or desirable for the better efficiency of the police department."

The ordinance suggests that the police chief may have promulgated the confidentiality rules as part of the department rules and regulations, and that the Village could potentially approve them. There is no proof, however, that the rules were actually approved by the Village. As noted, the minutes submitted by the State indicate that a "Policy and Procedures package" was approved by the board, but there is no evidence that the confidentiality rules were part of that package. Even if we could conclude that the confidentiality rules at issue were part of that package, the board's approval of the package would still not establish that the rules were formally enacted as an ordinance. Additionally, Alex DiMare only testified that the rules were "adopted in 1985," without any explanation of the process used or the person or entity adopting the rules.

We further note that the Illinois Municipal Code provides, "[t]he municipal clerk shall record, in a book used exclusively for that purpose, all ordinances passed by the corporate authorities." 65 ILCS 5/1–2–5 (West 2008). The Municipal Code specifies methods for proving the contents and passage of ordinances. 65 ILCS 5/1–2–5, 1–2–6 (West 2008). Accordingly, if the confidentiality rules were passed as an ordinance, the State could have easily proven the contents and passage of that ordinance. The State did not submit proof of the contents or passage of any ordinance prohibiting disclosure of confidential information.

We conclude that the record does not show the confidentiality rules were formally passed or enacted by the Village as an ordinance. The record here only shows that defendant violated rules adopted by the Glenwood police department on the disclosure of confidential information. We must, therefore, determine whether those rules qualify as "laws" within the meaning of the official misconduct statute.

In reviewing the confidentiality rules, we find our appellate court's reasoning in *People v. Gray*, 221 Ill. App. 3d 677 (1991), persuasive. In that case, the defendant was employed as a janitor by an Illinois veterans home and became friends with a resident of the home. Eventually, the resident approached the defendant and offered to invest $60,000 in his restaurant. After considering the offer for a few days, the defendant accepted. In exchange for the $60,000, the defendant assigned his interest in the restaurant building to the resident in a document drafted by the resident. *Gray*, 221 Ill. App. 3d at 679-80.

The parties had a falling out shortly after the restaurant was opened and the resident filed suit, seeking the return of his $60,000 investment. The State subsequently charged the defendant with official misconduct alleging that, while acting in his official capacity as a public employee, he knowingly performed an act that he knew was forbidden by law, "that law being the Department of Veterans Affairs Illinois Veterans Home Personal Conduct Rules for Employees, to wit: having any financial transactions with clients or members." The defendant acknowledged that he was aware of the personal conduct rules and understood he had violated a rule against financial dealings with residents. *Gray*, 221 Ill. App. 3d at 680-81. The defendant was convicted of official misconduct (Ill. Rev. Stat. 1989, ch. 38, par. 33–3(b)) and sentenced to a term of probation. *Gray*, 221 Ill. App. 3d at 678.

On appeal, the State argued that the rule of the home was a "law" under the official misconduct statute because it was "a properly promulgated administrative rule or regulation." The appellate court rejected the State's argument, holding that the record only demonstrated "someone in authority at the Home thought this rule to be desirable, included it in the list of employment rules to be passed out to all employees, and defendant was given a copy." *Gray*, 221 Ill. App. 3d at 683-84. The evidence showed that the rule was "generated

by the Home's administrative staff and applied to no other facility of the Department of Veterans Affairs." *Gray*, 221 Ill. App. 3d at 684.

The appellate court listed several other prohibitions in the home's personal conduct rules, including deliberately refusing to obey a supervisor's orders, using obscene or abusive language, "[d]isobeying instructions, procedures and policies, whether through neglect, procrastination or deliberate disobedience," and "[d]eliberately interfering with or delaying the work of other employees." *Gray*, 221 Ill. App. 3d at 684. The appellate court recognized that the rules prohibited "a lot of bad things an employee might do or say" and a violation of those rules may justify suspension without pay or immediate discharge. *Gray*, 221 Ill. App. 3d at 685. The legislature could not have intended, though, to deem that behavior a felony when it enacted the official misconduct statute. *Gray*, 221 Ill. App. 3d at 685-86. The appellate court, therefore, held that the official misconduct statute was not applicable to these facts and reversed the defendant's conviction. *Gray*, 221 Ill. App. 3d at 686.

Similarly, there is no evidence in this case that any formal legislative process was used in adopting the confidentiality rules. The evidence does not even establish that the rules were sanctioned or approved by the Village of Glenwood. The rules were, therefore, prescribed without any formal enactment or informal approval by a governing body. We share the *Gray* court's concern about construing the term "law" in the official misconduct statute so broadly that it includes rules promulgated solely by a person in authority of a governmental department or the administrative staff.

The confidentiality rules here were apparently promulgated under the ordinance allowing the police chief to prescribe rules and regulations covering, among other things, conduct of the members, uniforms and equipment, hours of service, and vacations. The State's argument would allow a felony official misconduct prosecution to be based on a violation of rules prescribed solely by the police chief on those matters. We further note that the confidentiality rules introduced by the State provide, in part, that "[a]llegations, gossip, hearsay, rumor and anonymous uncorroborated information shall be treated as confidential." Although the State did not contend defendant violated that particular part of the rule, accepting the confidentiality rules as "law" would allow a felony prosecution to be based on the police

-11-

chief's rules prohibiting disclosure of gossip, hearsay, or rumor. We do not believe the legislature intended the term "law" to be given such a broad construction.

In sum, we conclude that the confidentiality rules here do not rise to the level of a "law" within the meaning of the official misconduct statute. The State's evidence that defendant violated those rules is not sufficient to show that defendant performed an act "forbidden by law" as required to sustain a conviction of official misconduct. We must, therefore, affirm the appellate court's judgment that the evidence was insufficient to sustain defendant's conviction.

When a conviction is reversed based on evidentiary insufficiency, the double jeopardy clause precludes the State from retrying the defendant, and the only proper remedy is a judgment of acquittal. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). Given our decision on this issue, it is unnecessary to address the parties' other arguments on the applicability of the confidentiality rules to defendant and the constitutionality of the official misconduct statute.

As a final matter, we emphasize that our holding should not be interpreted as an approval of defendant's conduct. The conduct here is certainly troublesome and unjustifiable. We hold that defendant did not commit the offense of official misconduct only because the confidentiality rules at issue here cannot be construed as "laws" under the statute. At oral argument, defense counsel asserted defendant may have been properly charged with other criminal offenses. We do not express any opinion on that point. We only hold that the circumstances presented by this case do not establish the offense of official misconduct.

### III. CONCLUSION

For the foregoing reasons, we affirm the appellate court's judgment reversing defendant's conviction and entering a judgment of acquittal.

*Appellate court judgment affirmed.*